UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRETT PEGG,<br><br>                         Plaintiff,<br><br>          v.<br><br>UNITED SERVICES AUTOMOBILE<br>ASSOCIATION a/k/a USAA CASUALTY<br>INSURANCE COMPANY<br>                         Defendant. | Civil Action No. 09-02108<br><br>**OPINION** |

**CHESLER**, District Judge

      Presently before the Court is the motion by Defendant United Services Automobile Association Casualty Insurance Company ("Defendant" or "USAA") for summary judgment. Plaintiff Brett Pegg ("Plaintiff" or "Pegg") has opposed the motion, and in turn has filed a cross-motion for partial summary judgment. This Court has reviewed the papers filed by the parties in connection with the instant motions and, pursuant to Federal Rule of Civil Procedure 78, rules based on the papers submitted. As this Court concludes that New Jersey law applies, and that the issues raised by the motions must be resolved in Defendant's favor, USAA's motion for summary judgment will be granted, while Pegg's motion for partial summary judgment will be denied.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

      This is a declaratory judgment action in which Plaintiff seeks a declaration that he is eligible to receive underinsured motorist ("UIM") benefits pursuant to an automobile liability

1

insurance policy issued by Defendant. At the heart of the cross-motions before the Court lies a choice-of-law question: whether the insurance contract should be governed by Pennsylvania or New Jersey law. The facts necessary to dispose of this motion are not in dispute.

In November of 2003, Kathy Ann Ballas, a resident of Murray Hill, New Jersey and mother of Plaintiff Pegg, submitted a signed New Jersey Application for a Personal Automobile Policy to Defendant USAA on a model year 2000 Jeep Cherokee. On her application, Ballas stated her desire for bodily injury liability coverage in the amounts of $100,000 per person, $300,000 per accident. Ballas desired similar limits of Uninsured/Underinsured Motorist[1] ("UM/UIM") Bodily Injury coverage: $100,000 per person, $300,000 per accident.

USAA issued Ballas an automobile insurance policy ("the Ballas Policy") in December of 2003. The Ballas Policy indicated the insured vehicle, the 2000 Jeep Cherokee, was principally garaged at an address in Murray Hill, New Jersey. It was amended effective December 12, 2003, when a second vehicle, a model year 1990 Volvo 240 sedan, garaged in the same New Jersey location as the Jeep Cherokee, was added. The Ballas Policy was renewed in December 2004, effective through December 2005. The 1990 Volvo was subsequently deleted from coverage, per an endorsement effective February 8, 2005.

Of relevance to the motions before the Court, the Ballas Policy defined the term "underinsured motor vehicle" as follows:

---

[1] "Uninsured" motorist coverage protects against "the risk that a passenger in a vehicle may be injured through the negligence of the operator of another vehicle that is not insured." Ross v. Transport of N.J., 114 N.J. 132, 135 (1989). "Underinsured" motorist coverage generally applies to any "optional first party coverage insuring the policy holder, and others, against the possibility of injury or property damage caused by the negligent operation of a motor vehicle whose liability insurance coverage is insufficient to pay for all losses suffered." French v. N.J. Sch. Bd. Ass'n Ins. Group, 149 N.J. 478, 482 (1997).

    2. With respect to a covered person who:

        a.      Is not the named insured under this policy or any other policy; and

        b.      Is insured as a spouse or family member under one or more other policies providing similar coverage.

    an underinsured motor vehicle is a vehicle . . . to which liability bonds and policies for [bodily injury] and [property damage] are available, but the sum of the limits of the bonds and policies is less than the sum of the limits for Underinsured Motorists Coverage afforded under this policy . . .

    3. With respect to a covered person not described in paragraph 1 or 2 above [named insured or insured family member], an underinsured motor vehicle means a vehicle . . . to which liability bonds and policies for [bodily injury] and [property damage] are available but the sum of the limits of the bonds and policies is less than the sum of the limits of liability for this coverage.

(Def.'s Ex. D, New Jersey Standard Auto Policy at 24.)[2]

On October 31, 2005, Plaintiff Brett Pegg, a student in his freshman year at Drexel University in Philadelphia, Pennsylvania, was a pedestrian walking across Market Street in Philadelphia when he was struck by an automobile driven by Michael Fetko. Pegg was admitted to the Hospital of the University of Pennsylvania, operated on, and discharged on November 3, 2005. After three days spent packing personal items from his dormitory room on the Drexel campus, Pegg returned to his mother's home in New Jersey. Pegg remained at his mother's New Jersey home at least through the beginning of 2006.

---

[2] The record indicates that the named insured on the Ballas Policy was Kathy Ann Ballas, Pegg's mother. The Ballas Policy in effect from December 2004 to December 2005 lists Pegg as an operator. While Defendants have argued that the UIM provisions of the Ballas Policy preclude Pegg from obtaining benefits thereunder in connection with the October 2005 accident, the Court notes that they do not concede that Pegg was a "covered person" under the Ballas Policy by virtue of being a "family member" of the named insured.

Pegg asserted a claim for personal injuries against Fetko. Fetko's automobile was insured by Allstate Insurance Company for liability amounts of $100,000 per person, $300,000 per accident. By letter of August 27, 2008, Pegg's attorney advised USAA that Allstate had offered $95,000 offer to settle Pegg's claim against Fetko and sought USAA's permission to consummate the settlement. The letter further advised that Pegg intented to pursue a UIM benefit claim against USAA. Defendant USAA waived its rights of subrogation against Fetko and granted Pegg permission to settle his claim. By letter of September 23, 2008, USAA stated its position that UIM coverage under the Ballas Policy had not been triggered by the October 2005 accident because the coverage limits under the alleged tortfeasor's automobile insurance policy with Allstate were the same as the limits under the Ballas Policy. The letter explained: "Because the bodily injury limits under the Allstate policy and the UIM limits under the insured's policy are both $100,000, the limits are offset and there is no UIM exposure." (Pl.'s Ex. D.)

In March of 2009, Pegg initiated a legal action in the Superior Court of New Jersey, Essex County. In addition to seeking a declaration that Pegg is eligible to receive UIM benefits under the Ballas Policy in connection with the October 2005 accident, the Complaint also alleges that USAA breached its duty of good faith and fair dealing in denying Pegg UIM benefits. USAA removed the action to federal court on May 1, 2009. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

**II.    DISCUSSION**

    **A.    Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 247-48.  The Supreme Court has held that and Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but  "must exceed the 'mere scintilla' threshold").  Stated differently, "[a] non-moving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

B.     Choice of Law Analysis

Resolution of the parties' summary judgment motion centers on whether the Court should apply the law of Pennsylvania or the law of New Jersey to the UIM coverage issue raised by Pegg's claim for a declaratory judgment. The parties' respective positions on this choice-of-law issue are as follows:

Pegg urges the application of Pennsylvania law, which would in turn bring to bear the stacking component of § 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law on the policy. 75 Pa. Cons. Stat. § 1738(a) (2010).[3] Pennsylvania law defines stacking as the ability to add, or "stack," UIM coverages from multiple vehicles under an insurance policy, thus increasing the amount of coverage available under any such policy. Everhart v. PMA Ins. Group, 595 Pa. 172, 175 (2007). Pegg argues that since the policy originally covered two vehicles, an additional $100,000 in UIM benefits should be made available to compensate him for injuries stemming from the October 2005 accident.

USAA maintains that New Jersey's law governs the interpretation of the policy, and thus as a matter of law Pegg is barred from the receipt of *any* UIM benefits whatsoever because Fetko was not an underinsured motorist. USAA argues simply that since Fetko's liability limits were exactly the same as the UIM coverage under the Ballas Policy at the time of the accident, the car

---

[3] Section 1738 reads in relevant part:

When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply to each vehicle so insured. *The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is insured*.

75 Pa. Cons. Stat § 1738(a) (emphasis added).

that struck Pegg was not "underinsured." See N.J.S.A § 17:28-1.1(e) (2010);[4] see also David v. Gov't Employee Ins. Co., 360 N.J.Super 127, 150-51 (App. Div. 2003), cert. denied 178 N.J. 251 (2003).

        1.      Analytical Framework

When deciding a choice-of-law issue, a federal district court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state. Hammersmith v. TIG Ins. Co., 440 F.3d 220, 226 (3d. Cir. 2007) (citing Klaxon v. Stentor Mfg. Co., 313 U.S. 487 (1941)). As such, the choice-of-law principles of New Jersey, the forum state, govern the resolution of the instant contract dispute.[5]

Under New Jersey law, a choice of law analysis must be conducted in two steps. Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006); see also P.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008) (reviewing two-step procedure under New Jersey law for addressing choice of law issues). First, the Court must determine whether an actual conflict exists between the laws of potentially interested states. Lebegern, 471 F.3d at 428. "The initial step in choice-of-law questions is a determination of whether there is a distinction *in the laws* of particular jurisdictions. Id. at 430 (quoting Grossman v. Club Med Sales, Inc., 273 N.J. Super. 42, 48

---

[4] Section 17:28-1.1(e) reads in relevant part: "A motor vehicle is underinsured when the sum of the limits of liability under all...insurance policies available to a person against whom recovery is sought is...less than the applicable limits for underinsured motorist coverage afforded under the...insurance policy held by the person seeking that recovery." This language mirrors the terms of the policy at the center of this UIM dispute.

[5] The Court notes that though the parties seem to disagree whether an action for UM/UIM benefits sounds in contract or tort, it is clear that New Jersey courts utilize contract principles to adjudicate disputes over allegedly unpaid UIM benefits. See Zirger v. General Accident Ins. Co., 144 N.J. 327, 333 (1996).

(App. Div. 1994)). Applying New Jersey choice of law principles, the Third Circuit has held that "[i]f there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same. Id. at 428. Second, assuming there is a true conflict, the Court may then proceed to resolve the conflict according to the test applicable to the law or issue at the heart of the conflict. Id.; Camp Jaycee, 197 N.J. at 143-44.

Two seminal cases in New Jersey establish the choice of law test applicable to contract disputes. In State Farm Mutual Auto Insurance Co. v. Estate of Simmons, the New Jersey Supreme Court faced a choice of law issue in an automobile insurance dispute and rejected a strict *lex loci contractus* rule in favor a flexible test for determining which state has the "dominant and significant relationship"[6] to the parties and underlying issues, according to the Restatement (Second) Conflicts of Law (hereinafter the "Restatement"). State Farm Mut. Auto Ins. Co. v. Estate of Simmons, 94 N.J. 28, 37 (1980). State Farm reasoned:

> [T]he law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the general situs of the insured risk and will furnish needed certainty and consistency in the selection of applicable law.[...] At the same time, this choice-of-law rule should not be given controlling or dispositive effect. It should not be applied without a full comparison of the significant relationship of each state to the parties and the transaction. This assessment should encompass an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy.

Id. The Supreme Court later reinforced its adherence to this flexible, Restatement-based test in its opinion in Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 134 N.J. 96, 102-03 (1993).

---

[6]For the purposes of this opinion, the following terms are used interchangeably: Dominant and significant relationship, significant relationship, and most significant relationship.

8

There, the Court emphasized the importance of applying the Restatement principles to identify the state law that comports with the parties' expectations. Id. at 102-04. According to the test articulated by the New Jersey Supreme Court in State Farm and Gilbert Spruance, three provisions of the Restatement come into play to guide the Court's evaluation of which state has the dominant and significant relationship to the action: sections 6, 188, and 193. State Farm, 84 N.J. at 37; Gilbert Spruance, 134 N.J. at 102-03. The Court will review them and proceed to apply them to the instant action.

Section 6 is considered "the cornerstone of the entire Restatement." Camp Jaycee, 197 N.J. at 140 (quoting Eugene F. Scoles et al., *Conflict of Laws* § 2.14 (2d ed. 2004)). It deems the factors "relevant to the choice of the applicable rule of law" to include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement § 6.

For the field of contracts generally, § 188 proposes five contacts which are to be considered "according to their relative importance" when applying the § 6 principles: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d)

the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement § 188.

Section 193 of the Restatement deals specifically with casualty insurance contracts like the Ballas Policy currently before this Court. Section 193 states:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

### 2. Application of Test to UIM Coverage Under Ballas Policy

The first step of the test requires the court to determine whether there is an actual conflict to resolve. Here, it is clear that the laws of New Jersey and Pennsylvania as they pertain to UIM coverage in automobile insurance policies are in actual conflict. Pennsylvania defines an underinsured motor vehicle broadly: any automobile "for which the limits of available liability insurance *are insufficient* to pay losses and damages." 75 Pa. Cons. Stat. § 1702 (emphasis added). Pennsylvania law mandates that insurers are to "provide protection for all persons injured by a motor vehicle having less liability insurance than the loss and damages sustained." North River Ins. Co., v. Tabor, 934 F.2d 461, 464 (3d. Cir. 1991). In contrast, New Jersey places important limitations on what constitutes an underinsured automobile, and subsequently, on those who can recover underinsured motorist benefits from their insurer. New Jersey law describes underinsurance coverage by comparing the coverage of an alleged tortfeasor to the victim's available UIM coverage. See N.J.S.A. § 17:28-1.1(e); Selective Ins. Co. of Am. v. Thomas, 179 N.J. 616, 619-20 (2004). Under New Jersey law, UIM coverage is not triggered

10

unless the alleged tortfeasor's liability limits are lower than the limits of the UIM coverage in the plaintiff's policy. Selective Ins., 179 N.J. at 619-20. The dichotomy between the states' laws on UIM coverage is further underscored by Pennsylvania's statutory allowance and New Jersey's statutory prohibition of "stacking." Compare 75 Pa. Cons. Stat. § 1738(a) ("The limits of coverages available...for an insured shall be the sum of the limits for each motor vehicle[.]") with N.J.S.A. § 17:28-1.1(c) ("[U]nderinsured motorist coverage...shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance[.]").

Having established that an actual conflict exists between the relevant laws of New Jersey and Pennsylvania on the applicability of UIM coverage under a automobile insurance policy, the Court next turns to New Jersey's test for resolving a conflict of laws in the field of contracts, and in particular casualty insurance contracts.

Under State Farm , there is a presumption that the place of the making of the contract will have the most significant relationship. State Farm, 84 N.J. at 37-38 (noting that such an approach protects the "reasonable expectations of the contracting parties as to the primary location of the insurance risk and satisfies the needs for certainty, predictability and uniformity."); see also Walsh v. Mattera, 379 N.J. Super. 548, 558 (App. Div. 2005) ("The parties would reasonably expect the law of the state where the parties entered into the contract would control.") The record demonstrates, and the parties do not dispute, that the Ballas Policy was negotiated, obtained, and entered into in New Jersey, between a New Jersey resident and the carrier.

This presumption does not end the inquiry, however.  This Court must next undertake "an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy."  State Farm, 84 N.J. at 37. New Jersey jurisprudence and Restatement § 193 instruct that the most germane consideration in determining which state has the dominant relationship to a controversy involving a casualty insurance contract, such as an automobile insurance policy, is the location of the insured risk. Id.; Restatement § 193.  Here, that location is New Jersey.

The Restatement describes an "insured risk" as "the object or activity which is the subject matter of the insurance."  Restatement § 193 cmt. b.  The "insured risk" of an automobile liability policy is the automobile, or automobiles, insured under such a policy.  The Restatement further counsels that "in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged, at least during most of the period in question." Id.  While recognizing an automobile is intrinsically a movable chattel, the Restatement nonetheless directs courts to view the place where the insured automobile is garaged as its "principal location."  Id.  This location is then considered "the most important contact to be considered in the choice of applicable law."  Id.  In this case, the Jeep Cherokee and the Volvo 240, the vehicles covered by the Ballas Policy starting in December of 2003 were the "insured risks."  Both automobiles were declared to be principally garaged in Murray Hill, New Jersey, and the one vehicle covered at the time of Pegg's October 2005 accident - the Jeep Cherokee - was in fact garaged in New Jersey. The fact that Pegg, as a pedestrian, was struck by Fetko and injured in Pennsylvania has no bearing on § 193's "insured risk" contact.  Pegg's reliance on Travelers Ins. Co. v. Davis, 490 F.2d 536 (3d Cir. 1974) for the proposition that the term

"insured risk" could encompass the individuals who are covered by an automobile liability policy is misplaced.  That case is both legally and factually distinct, as it did not involve application of New Jersey's choice of law test nor, for that matter Restatement § 193, and the automobile insurance contract at issue insured over 40 vehicles located throughout the United States.  At the time of Pegg's October 2005 accident, the Ballas Policy insured one automobile, which was undisputably located in New Jersey.  Under Restatement § 193, New Jersey is thus "the state which the parties understood was to be the principal location of the insured risk during the term of the policy."

Apart from the place where the contract was made and the location of the insured risk covered by the contract, the great majority of contacts relevant to the instant dispute weigh on the New Jersey side of the ledger.  Pegg was a domiciliary of New Jersey.  When the accident occurred, Pegg's presence in Pennsylvania was temporary, and in fact he returned to his mother's home in New Jersey less than a week after the accident, where he remained until the beginning of the spring 2006 semester at Drexel University.  The Ballas Policy affording Pegg insurance coverage was obtained in December of 2003, when Pegg was a high school student and resident of New Jersey.  Further, the record contains no indication that USAA had any notice Pegg was residing in Pennsylvania prior to the October 2005 accident.

The State Farm framework next mandates "a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy."  417 A.2d at 493.  State Farm highlights § 6(b), (c), and (e) as especially pertinent. Id. at 494.

New Jersey's UIM statute is meant to "serve a limited purpose." Selective Ins., 179 N.J. at 620 (N.J. 2004) (citing N.J.S.A. § 17:28-1.1(e)(1)).  UIM coverage is intended simply "to put

13

[the injured party] in as good a position as if the tortfeasor possessed an amount of liability insurance equal to the UIM coverage of an 'insured' under the policy in question." Id. UIM coverage in New Jersey is meant only to remedy victims of financially irresponsible motorists and by doing so contain rising insurance costs. See Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 503 (1987).

Pennsylvania law on UM/UIM coverage is concerned with both cost containment and consumer choice. Progressive N. Ins. Co. v. Schneck, 572 Pa. 216, 222-23 (2002). A policy tension exists between the goal of protecting injured parties from underinsured motorists unable to totally compensate their victims and the competing interest of containing costs and holding insured parties to their voluntary choices. Compare Paylor v. Hartford Ins. Co., 536 Pa. 583, 587 (1994) (discussing UIM coverage in the context of the protection of risk from tortfeasor who is unable to entirely compensate insured victims for their injuries) with Eichelman v. Nationwide Ins. Co., 551 Pa. 558, 566-67 (1998) (recognizing legislative recognition of binding insured to voluntary choice of not obtaining UIM coverage and recognizing that the goal of total compensation "does not rise to the level of public policy overriding every other consideration of contract construction."). What is clear is the consistent legislative goal of allowing a higher percentage of Pennsylvania drivers the means to afford insurance. Everhart, 595 Pa. at 181.

Both results Plaintiff seeks by virtue of applying Pennsylvania law to this dispute, that is viewing Fetko as an underinsured motorist and stacking the UIM coverages for the cars under the Ballas Policy, frustrate the limited purpose of UIM coverage as a gap filler, according to New Jersey law. See Selective Ins., 179 N.J. at 620. The record indicates no financially irresponsible motorist here. The only motorist involved, Fetko, carried the exact same bodily injury coverage

14

limits as the UM/UIM coverage provided in the contract covering the injured party, Pegg.  As such, no gap exists to be filled, and the application of Pennsylvania UIM coverage law would be at odds with New Jersey's interest in limiting UIM coverage to the problem of motorists who fail to carry sufficient insurance.  Stacking, moreover, would force insurers to factor such a downstream doubling of pay-outs into their rates, driving up future insurance costs to consumers.

      Having considered the various factors prescribed by the Restatement as relevant to determining which state has the most significant relationship to the controversy, the Court is satisfied that the law of the place of contracting best serves the parties' reasonable expectations.  Therefore New Jersey UIM coverage law controls.

      **C.**     **Merits of Plaintiff's Claim Under New Jersey's UIM  Provisions**

      The relevant statute concerning what constitutes an "underinsured" motor vehicle under New Jersey automobile liability insurance law bears repeating.  It provides: "A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery." N.J.S.A. § 17:28-1.1(e).  The evidence of record clearly demonstrates that the liability limits of Fetko's policy were not, at the time of the accident, less that UIM limits in the policy pursuant to which Pegg seeks recovery.  In fact, the coverage amounts of both policies mirror each other.  As such, the vehicle which struck Pegg was not underinsured.  Moreover, New Jersey law expressly prohibits stacking the coverage limits of

15

multiple motor vehicles to increase UIM coverage under a policy. N.J.S.A. § 17:28-1.1(c). The evidence, in short, demonstrates that Pegg is not entitled to the relief he seeks - a declaration of eligibility for UIM coverage under the Ballas Policy in connection with the October 2005 accident - as a matter of law.

Pegg, in rebuttal, has failed to proffer evidence sufficient to "allow a jury to find in its favor at trial." In light of these findings, the Court concludes that USAA is entitled to summary judgment on the entirety of Plaintiff's Complaint.[7] Plaintiff's cross-motion for partial summary judgment, seeking a declaration that Pennsylvania law applies to his demand for UIM benefits, will accordingly be denied.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant USAA's motion for summary judgment. An appropriate form of order will be filed together with this Opinion.

                                           s/Stanley R. Chesler
                                          STANLEY R. CHESLER
                                          United States District Judge

DATED: December 17, 2010

---

[7] In view of Pegg's inability to withstand USAA's motion for summary judgment as to eligibility for coverage, Pegg's claim alleging bad faith on the part of USAA must also be disposed of on summary judgment. "Under the 'fairly debatable' standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim." Pickett v. Lloyd's, 621 A.2d 445, 454 (N.J.1993).